UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-12277-RWZ

UNITED STATES OF AMERICA
f/b/o METRIC ELECTRIC, INC.

v.

CONSTRUCTION & TELECOMMUNICATION SERVICES, INC.,
and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

MEMORANDUM OF DECISION

August 2, 2013

ZOBEL, D.J.

Plaintiff United States of America for the benefit of Metric Electric, Inc., a subcontractor, seeks to recover from prime contractor Construction & Telecommunication Services, Inc. ("CTS"), and its surety, Travelers Casualty and Surety Company of America ("Travelers"), for work performed on a federal construction project. Plaintiff filed an amended complaint in five counts: (1) breach of contract; (2) quantum meruit; (3) violation of the Miller Act, 40 U.S.C. § 3131 et seq.; (4) violation of the Massachusetts Prompt Pay Act, Mass. Gen. Laws ch. 149 § 29E; and (5) unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A. Defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (Docket # 11).

**I. Background**[1]

---

[1] The facts are drawn from plaintiff's amended complaint ("Am. Compl.") (Docket # 4).

CTS, under an agreement with the United States General Service Administration ("GSA"), was the prime contractor for a renovation of the office of Customs and Border Patrol at the Thomas P. O'Neill, Jr. Federal Building in Boston, Massachusetts ("the project"). CTS obtained a payment bond from Travelers in the amount of $1,401,785.30 as required by the Miller Act, 40 U.S.C. § 3132. On August 23, 2011, it subcontracted plaintiff for $481,000.00 to perform electrical work on the project.

Plaintiff alleges that it completely performed the work required under the subcontract, and its invoices to CTS from September 2011 through April 2012 were fully and timely paid. However, on May 22, 2012, plaintiff submitted an invoice for $79,147.47, of which only $43,505.12 was paid, and a July 17, 2012, invoice for $24,386.62, which CTS never paid. In all, plaintiff billed CTS for $530,068.02, but received payments totaling only $470,039.05, a shortfall of $60,028.97.

Plaintiff argues that CTS did not timely reject its invoices in writing, did not explain the factual and contractual basis for rejecting invoices, and did not certify that any rejection was made in good faith. Plaintiff also submitted several written change order requests during the course of its work, but CTS either failed to timely respond or rejected the requests without providing a proper basis for doing so and has failed to pay for change order work that plaintiff completed. CTS claimed that it was waiting for GSA to approve the change orders before signing off on them; plaintiff asserts that many of the change orders submitted to GSA were in fact approved and paid.

Plaintiff's work on the project ended following a dispute over a door. Plaintiff was responsible for installing electrical wiring on a battery-operated door referred to as

"the East Hall Door."  However, due to an issue with the battery operation of the door, plaintiff refused to wire the door because doing so "would present a serious Life Safety issue."  Am. Compl. ¶ 38.  CTS also insisted that plaintiff complete the wiring of the East Hall Door without a signed change order, but plaintiff refused to do more work unless it were paid.  CTS terminated plaintiff on August 24, 2012.

On November 2, 2012, plaintiff provided notice to CTS that $60,028.97 remained due under the Contract and that it intended to make a claim against the bond.  It filed this suit on December 7, 2012, and an amended complaint on December 12, 2012.  Defendants moved to dismiss on March 18, 2013.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Plausibility "is not akin to a probability requirement, but [requires] more than a sheer possibility that a defendant has acted unlawfully." Id.  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id.  The inquiry is limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice.  In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).

## III. Discussion

### A. Count IV: Massachusetts Prompt Payment Act

Plaintiff claims that CTS violated the Massachusetts Prompt Pay Act, M.G.L. c. 149 § 29E, which establishes outside deadlines for review of construction payment

applications and change orders and requires that any rejection of requests be accompanied by an explanation and written certification that the rejection is good in faith.  Under the Prompt Pay Act, any application for payment or change order that is not properly rejected within the specified time limits is deemed approved.

Defendants correctly point out that the Prompt Pay Act applies only to construction contracts for which contractors and suppliers are entitled to file a lien on real estate and improvements under Massachusetts' Mechanic's Lien Statute, M.G.L. c. 254.  See M.G.L. c. 149 § 29E(a) (defining "Contract for construction" as "a contract for which a lien may be established under sections 2 or 4 of chapter 254").  In other words, the Prompt Pay Act covers *private* construction projects, not public projects occurring on public property, such as the federal construction project at issue here.[2]  See F.D. Rich Co., Inc. v. U.S. for the Use of Indus. Lumber Co., Inc., 417 U.S. 116, 122 (1974) ("Ordinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law.  But a lien cannot attach to Government property . . ."); Prindiville v. Boston & W. St. Ry., 115 N.E. 299, 299 (Mass. 1917) ("By the great weight of authority a mechanic's lien does not attach to public property unless the statute creating the lien expressly so provides.").  Federal projects are instead governed by the Miller Act, which requires general contractors to provide a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract."  40 U.S.C. § 3131.

---

[2] Indeed, the Prompt Pay Act is titled "An Act Promoting Fairness In Private Construction Contracts."

Plaintiff urges the court to treat its Miller Act rights as equivalent to lien rights and allow its Prompt Pay claim to proceed. It offers, however, no statutory or case law support for such an approach, which contradicts the express language and purpose of the Prompt Pay Act. I decline to adopt plaintiff's untenable position. Count IV of the amended complaint is dismissed.

### B. Remaining Counts

Defendants seek dismissal of plaintiff's breach of contract, quantum meruit, Miller Act, and 93A claims. The crux of their argument is that plaintiff fails to state a claim for relief because certain conditions precedent under the subcontract had not occurred. Specifically, defendants assert that plaintiff repudiated its contractual duties by failing to perform the work requested and that GSA had not approved or paid the change orders submitted by plaintiff.

Defendants are correct that, under Massachusetts law, a contractor "cannot recover on the contract itself without showing complete and strict performance of all its terms," Peabody N.E., Inc. v. Town of Marshfield, 689 N.E.2d 774, 779 (1998), and must establish substantial completion and a good faith effort to perform fully to recover on quantum meruit, Andre v. Maguire, 26 N.E.2d 347, 348 (Mass. 1940).[3] See also U.S. Steel v. M. DeMatteo Const. Co., 315 F.3d 43, 48 (1st Cir. 2002). However, defendants confuse the showing necessary to prevail on the merits with the allegations sufficient to meet pleading standards. Plaintiff has alleged in its complaint that it "fully

---

[3] While defendants specifically address the breach of contract and quantum meruit claims, they fail to explain how their arguments would disqualify the Miller Act and 93A claims.

performed the work required under the contract," Am. Compl. ¶ 9, and that its refusal to complete the wiring of the East Hall Door was excused by a safety issue and CTS's refusal to pay for the work, Am. Compl. ¶¶ 36-41.  See Peabody N.E., Inc. v. Marshfield, 689 N.E.2d 774, 779 (Mass. 1998) ("[A] breach caused solely by the other party's behavior is generally excused . . . ").  Plaintiff also claims to have "learned that many of the change orders submitted to GSA were approved and paid," Am. Compl. ¶ 31, challenging CTS's assertions that it was still waiting for GSA's approval.

The dispute here is over the facts, and, at least in evaluating the current motion, the court must accept plaintiff's facts as true.  Whether plaintiff can ultimately carry its burden on Counts I, II, III, and V remains to be seen, but the amended complaint alleges enough now to clear the pleading bar.

**IV. Conclusion**

Defendants' motion to dismissed is ALLOWED as to Count IV and DENIED as to Counts I, II, III, and V.


    August 2, 2013                                    /'s/Rya W. Zobel    
           DATE                                                   RYA W. ZOBEL
                                                                UNITED STATES DISTRICT JUDGE